**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| BOBBIE BISHOP SIMPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:12-CV-86 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Bobbie Bishop Simpkins ("Simpkins") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Simpkins alleges that because she experiences blurry vision from seizure medication, the ALJ erred in his determination that Simpkins could perform sedentary work.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that substantial evidence supports the ALJ's finding that Simpkins could perform sedentary work. As such, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 10.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Simpkins failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Simpkins bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals

the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Simpkins was born on October 3, 1953 (Administrative Record, hereinafter "R." at 87), and is considered a person of advanced age under the Act. 20 CFR § 404.1563(c). Simpkins' last insured date was March 31, 2010. R. 9, 43. Therefore, Simpkins must show that her disability began before the end of her insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Simpkins attended school through the eleventh grade and obtained a GED. R. 191. She previously worked as a laundry folder (light, unskilled work), accounting clerk (skilled, sedentary work), and an office assistant (light semiskilled work). R. 23. Simpkins reported that during the relevant period, she was able to drive a vehicle (R. 63) and do yard work, including tending to her flower garden and riding on a lawnmower. R. 282.

## Claim History

Simpkins protectively filed for DIB on August 11, 2010, claiming that her disability began on January 5, 2009. R. 178. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 106–10, 112–18. On November 3, 2011, Joseph T. Scruton ("ALJ") held a hearing to consider Simpkins' disability claim. R. 40–76. Simpkins was represented by an attorney at the hearing, which included testimony from Simpkins and vocational expert Mark A. Hileman. R. 54–59.

On December 7, 2011, the ALJ entered his decision denying Simpkins' claims. R. 24. The ALJ found that Simpkins suffered from the severe impairments of degenerative disc disease of the lumbar spine, hip arthrosis, obesity, and epilepsy, which was controlled with medication during the period during the relevant time period. R. 11. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 12. The ALJ further found that Simpkins retained the residual functional capacity ("RFC") to perform sedentary work, except Simpkins required in-place position shifts, and that she should avoid dangerous machinery and unprotected heights. R. 13. The ALJ determined that Simpkins could not return to her past relevant work as a laundry folder, accounting clerk, or office assistant (R. 23), but that Simpkins could work at jobs that exist in significant numbers in the national economy, such as a data entry clerk or order clerk. R. 24. Thus, the ALJ concluded that she was not disabled. R. 24. On June 13, 2012, the Appeals Council denied Simpkins' request for review (R. 1–5), and this appeal followed.

## ANALYSIS

Simpkins takes exception to the ALJ's decision on a single ground: that the ALJ improperly found that she could perform sedentary work despite blurred vision from her seizure

medicine. This appeal relies heavily on Simpkins' subjective complaints, including her hearing testimony. Simpkins testified that since she was prescribed Primidone, an antiepileptic medication, she experiences blurry vision all the time. R. 63. Simpkins said that although she was prescribed the medication at three doses a day, she only takes it twice a day because the full dosage blurs her vision to the point she gets sick. R. 44–45. When she senses an oncoming seizure, Simpkins testified that she would take extra medication to fend off "full blown, grand mal seizures." R. 47–48. Simpkins further stated that her biggest problem was reading and looking at computer screens, but that she was able to drive. R. 63. The vocational expert's testimony suggested that a hypothetical person would not be able to perform sedentary work without near acuity. R. 73–75.

The ALJ found that Simpkins' allegations of disabling seizures during the relevant period were not credible because evidence was "not borne out by the treatment notes." R. 14. The ALJ also found Simpkins' testimony that she had significant problems with blurred vision from her seizure medication to be "largely unsupported by the medical evidence of record." R. 20.

An "ALJ is not required to accept unquestioningly all alleged side effects of medications; complaints of side effects may properly be discredited by inconsistent evidence." Goodwater v. Barnhart, 579 F. Supp. 2d 746, 759 (D.S.C. 2007) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)). I find that substantial evidence supports the ALJ's decision to discredit Simpkins' complaints of disabling medication side effects, and find that she could perform sedentary work.

The medical evidence shows that Simpkins first had a seizure in 2006 after prolonged sleep deprivation and stress and was later prescribed the anti-epileptic medicine Topamax. R. 291, 294. On January 4, 2009, Simpkins saw her family physician, Dr. Charles Judy, who

diagnosed Simpkins with stable epilepsy. R. 340. Simpkins thereafter discontinued Topamax because she could no longer afford it. R. 291, 283. After stopping her medication, Simpkins had an epileptic episode on March 27, 2009, when she went to the emergency room after reporting four early-morning seizures in a row. R. 256–59. At a follow up appointment with Dr. Judy on March 30, 2009, Simpkins was prescribed Primidone, another antiepileptic medication, for three doses daily. R. 337.

On April 27, 2009, Simpkins saw Dr. Judy again and confirmed that she had begun taking Primidone. R. 336. At that time, Simpkins reported that she had initially experienced dizziness on the medication because she hadn't been eating anything prior to taking it. However, since she started eating with the medication, she had been "ok." R. 336. Simpkins did not report any blurred vision at that time.

On July 27, 2009, Simpkins visited Dr. Judy again and reported vision disturbances while on Primidone, but that she was "ok" on two divided doses. R. 339. Dr. Judy continued Simpkins on Primidone, but did not note whether Simpkins should take doses two or three times daily. R. 339. Simpkins continued to see Dr. Judy periodically for check-ups through May 2011, well past her date last insured. The treatment notes from these visits do not show any indication of blurred vision. R. 332–41, 385–89. Simpkins' primary complaints during this time were her lower back and hip pain and stress. Throughout this time Dr. Judy continued Simpkins on Primidone. On November 19, 2010, Dr. Judy reported to the Department of Motor Vehicles ("DMV") that Simpkins' epilepsy remained stable on medication and that she was able to safely operate a motor vehicle. R. 390–91.

This record provides more than a sufficient basis to support the ALJ's decision that Simpkins was not disabled by medication-induced blurry vision. Other than Simpkins' subjective

testimony, the record during the relevant period—between January 5, 2009 and March 31, 2010— is devoid of corroborating evidence supporting such a finding. Only once in the numerous visits to Dr. Judy did she report blurry vision, and even then, Simpkins said that she was "ok" on two daily doses. R. 339. Every other treatment note of Dr. Judy's is silent on the issue of blurred vision, including those outside of the relevant period. Nothing in Dr. Judy's treatment notes reflects that he insisted that Simpkins take the originally prescribed three daily doses. Notably, Dr. Judy described Simpkins' seizure disorder as stable and even reported to the DMV that she was capable of safely driving a car. R. 340, 390–91. Also, when Simpkins saw other medical providers for her back and hip impairments, she did not report any medicinal side effects except for sleepiness on Lortab on one occasion. R. 278–91, 299–313, 324–25.

Contrary to Simpkins' contention, the medical records from consulting neurologist Rollin Hawley, M.D. do not add objective support to Simpkins' subjective complaints. Pl.'s Br. Summ. J. 2. The only reference to blurred vision in Dr. Hawley's records is from May 1, 2007, when Simpkins reported blurred vision in a review of systems during a neurological examination focusing on Simpkins' upper extremity pain. R. 411–12, 423–44. Simpkins' "statements to physicians by way of history or complaint do not constitute objective medical evidence, and the recording of a claimant's complaints by a physician does not transform those complaints into objective clinical evidence." King v. Barnhart, 6:04CV00053, 2005 WL 3087853, at *4 (W.D. Va. Nov. 16, 2005) (citing Craig v. Chater, 76 F.3d 585, 590 n. 2 (4th Cir.1984)). Moreover, the treatment note is prior to the alleged onset date and prior to when Simpkins began taking Primidone, the medication to which she attributes the blurred vision.

Simpkins alleges that she has consistently complained of blurred vision from Primidone. Pl.'s Br. Summ J. 2. Her credibility determination, however, is the province of the ALJ.

Simpkins' subjective complaints of disabling side effects are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Simpkins has met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms alleged. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). This assessment requires the ALJ to evaluate the intensity and persistence of Simpkins' claimed symptoms and the affect those disabling conditions have on Simpkins' ability to work. Id. at 594–95. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

Given these well-established principles, and the substantial evidence in the record before the ALJ, I decline to disturb the ALJ's finding that Simpkins' complaints of disabling blurred vision were not credible.

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

8

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 7, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge